UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>   v.<br><br>DEREK T. GONZALES,<br><br>                 Defendant. | CASE NO. CR18-5489 BHS<br><br>ORDER GRANTING GOVERNMENT'S MOTION FOR PSYCHOLOGICAL EVALUATION |

This matter comes before the Court on Plaintiff United States of America's ("Government") motion for a psychological evaluation. Dkt. 86. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. RELEVANT BACKGROUND

On August 21, 2018, the Government charged Defendant Derek T. Gonzales ("Gonzales") by complaint with three counts of sexual abuse in violation of 18 U.S.C. §§ 2242(1), 2246(2), and 1153, and one count of abusive sexual contact in violation of 18 U.S.C. §§ 2244(b), 2246(3), and 1153. Dkt. 1. Gonzales was charged after two of his female relatives reported he had raped and/or sexually assaulted them. *Id.*

On August 8, 2018, Gonzales was arrested and interviewed by police. *Id.* ¶ 18.

On August 8, 2019, Gonzales filed a motion to suppress and dismiss. Dkt. 73. Gonzales argues that statements he made during his interrogation were involuntary in

ORDER - 1

violation of his Fifth Amendment right against compelled self-incrimination. *Id.* Gonzales states he has below average intelligence and other cognitive limitations that rendered him particularly vulnerable to the alleged police coercion during the interrogation. *Id.* at 10.

Shortly after filing his motion to suppress, Gonzales provided the Government with an expert disclosure notice for an expert specializing in the reliability of interrogations. Dkt. 86-1. In that notice, Gonzales also informed the Government that "the defense may call a psychologist to discuss whether Mr. Gonzales has a mental condition that could influence his response to police questioning." *Id.*

On October 28, 2019, Gonzales provided the Government with a supplemental expert disclosure notice for that expert, Dr. Grace Iarocci ("Dr. Iarocci"), pursuant to Fed. R. Crim. P. 12.2(b) and 16(b)(1)(C). Dkt. 86-2. The supplemental notice stated that Dr. Iarocci "will testify at trial and at an evidentiary hearing that Derek Gonzales meets the criteria for autism spectrum disorder ("ASD"), and explain how that disorder manifests." *Id.*

On November 12, 2019, the Government filed the instant motion for a psychological evaluation of Gonzales. Dkt. 86. Also on November 12, 2019, the parties agreed to stay briefing on the motion to suppress until the Court issues an order on the motion for psychological evaluation. Dkt. 84.

On November 22, 2019, Gonzales responded to the Government's motion for evaluation. Dkt. 92. On November 26, 2019, the parties agreed to stay briefing on the evaluation motion until Dr. Iarocci provided data from her examination of Gonzales to

the Government's proposed expert, Dr. Kenneth Muscatel ("Dr. Muscatel"), therefore allowing the Government to determine whether it could narrow the scope of its motion. Dkt. 93.

On January 16, 2020, the Court entered an order presented on stipulation of the parties establishing a schedule for further briefing on the evaluation motion and setting a noting date of February 7, 2020. Dkt. 98. Briefing on the motion to suppress is stayed until the Court issues the instant order on the evaluation motion. *Id.*

On January 17, 2020, the Government replied, Dkt. 99, and filed an updated opinion from Dr. Muscatel narrowing his proposed testing but indicating his belief that an independent assessment remained necessary, Dkt. 99-1.[1] On January 28, 2020, Gonzales filed a supplemental response. Dkt. 101. On January 31, 2020, the Government filed a final reply. Dkt. 102.

Trial is set to commence on May 5, 2020.

## II.  DISCUSSION

The Government moves for a compelled psychological evaluation pursuant to Fed. R. Crim. P. 12.2. Rule 12.2 provides that if a defendant will introduce expert evidence relating to a mental condition bearing on the issue of guilt, the court may, upon motion of

---

[1] In addition to the testing conducted by Dr. Iarocci, Dr. Muscatel "would add additional measures of Performance Validity, and assessment of attention, social reasoning and intellectual development, reading comprehension, and verbal processing, as well as some measures of executive functioning" in order to determine his agreement or lack thereof with Dr. Iarocci's diagnosis of ASD and assess Gonzales's capacity to waive *Miranda* and/or capacity to provide reliable and fruitful testimony during interrogation. Dkt. 99-1. Dr. Muscatel's evaluation can be completed "probably within a six-hour framework. . . ." *Id.*

the government, order a mental examination of the defendant. Fed. R. Crim. P. 12.2. The United States Supreme Court has held that where a defendant has noticed a mental defense, she waives her Fifth Amendment right against compelled self-incrimination and evidence from the reports of the examination may be introduced as rebuttal evidence by the prosecution. *Buchanan v. Kentucky*, 483 U.S. 402, 422–23 (1987).

In this case, the Government contends that an evaluation is necessary because the defense has relied on Dr. Iarocci's psychological evaluation diagnosing Gonzales with ASD and other cognitive limitations in bringing his motion to suppress. Dkt. 86. The Government argues it cannot properly evaluate the information put forth by the defense or respond to the motion to suppress Gonzales's statements as involuntary without an independent evaluation performed by its own expert witness. *Id.*

Gonzales argues that the motion is improper for three reasons: (1) Rule 12.2 does not authorize the examination, because the threshold issue of admissibility of his statements does not bear on the issue of guilt at trial; (2) further evaluation is unnecessary; and (3) the Government's proposed testing may produce unreliable results. Dkts. 92, 101. If the motion is granted, Gonzales asks the Court to order the testing be administered in a safe space over several days to accommodate his disability. Dkt. 92 at 8. The Court examines Gonzales's arguments in turn.

**A.     Rule 12.2**

Rule 12.2 authorizes compelled examinations for mental conditions bearing on the issue of guilt. Fed. R. Civ. P. 12.2. Gonzales argues that the question whether his statements to law enforcement were involuntarily made is a "pretrial issue[] of

admissibility" not bearing on his guilt at trial, and therefore the motion is not supported by the rule. Dkt. 101 at 2–3; *see also* Dkt. 92 at 4. The Court however, agrees with the Government that the issue "goes to the heart of the matter in this case — the defendant's guilt." Dkt. 102 at 2. For example, Gonzales's involuntariness argument is premised on the assertion that his ASD and other cognitive limitations allowed him to succumb to alleged coercion by law enforcement occurring during the interrogation. Although he correctly identifies that whether his statements were voluntary and thus admissible does not turn on whether the statements were true in the context of a suppression motion, this is too narrow a focus when considering the propriety of a compelled examination under Rule 12. Indeed, regardless of whether Gonzales's answers were true or false, the Government may use information from its evaluation to rebut his likely argument at the suppression hearing that he was overcome by police questioning based in part on the manifestation of his ASD, if that rebuttal is supported by its expert's opinion. Additionally, if the Court admits Gonzales's statements as voluntary, whether his inculpatory answers were true or instead resulted from his ASD and other limitations will become a key issue at trial. Accordingly, the Court concludes that Gonzales's mental state during the interrogation bears directly "on the issue of guilt" regarding the alleged sexual assaults in this case.

B.     **Necessity of Evaluation**

Gonzales next contends that further evaluation is unnecessary because the Government fails to identify a flaw in Dr. Iarocci's expert evaluation. Dkt. 101 at 3. Gonzales asserts that if "the government simply desires to argue that an autism diagnosis

admissibility" not bearing on his guilt at trial, and therefore the motion is not supported by the rule. Dkt. 101 at 2–3; *see also* Dkt. 92 at 4. The Court however, agrees with the Government that the issue "goes to the heart of the matter in this case — the defendant's guilt." Dkt. 102 at 2. For example, Gonzales's involuntariness argument is premised on the assertion that his ASD and other cognitive limitations allowed him to succumb to alleged coercion by law enforcement occurring during the interrogation. Although he correctly identifies that whether his statements were voluntary and thus admissible does not turn on whether the statements were true in the context of a suppression motion, this is too narrow a focus when considering the propriety of a compelled examination under Rule 12. Indeed, regardless of whether Gonzales's answers were true or false, the Government may use information from its evaluation to rebut his likely argument at the suppression hearing that he was overcome by police questioning based in part on the manifestation of his ASD, if that rebuttal is supported by its expert's opinion. Additionally, if the Court admits Gonzales's statements as voluntary, whether his inculpatory answers were true or instead resulted from his ASD and other limitations will become a key issue at trial. Accordingly, the Court concludes that Gonzales's mental state during the interrogation bears directly "on the issue of guilt" regarding the alleged sexual assaults in this case.

**B.     Necessity of Evaluation**

Gonzales next contends that further evaluation is unnecessary because the Government fails to identify a flaw in Dr. Iarocci's expert evaluation. Dkt. 101 at 3. Gonzales asserts that if "the government simply desires to argue that an autism diagnosis

is invalid unless accompanied by neuropsychological Performance Validity testing, Dkt. 99, Exhibit A, it can make that argument without subjecting Mr. Gonzales to an examination by a hostile expert." *Id.*

The Government contends that this argument "ignores the fact that Dr. Iarocci did not conduct much of the testing that Dr. Muscatel believes is necessary to adequately explore the very issues the defense experts are expected to testify about — defendant's ability to voluntary [sic] waive *Miranda* and his capacity to provide truthful and accurate information to law enforcement during the interrogation." Dkt. 99 at 8 (footnote omitted). The Court agrees that Dr. Muscatel cannot determine whether he agrees or disagrees with Dr. Iarocci's opinion, and thus the Government cannot challenge that opinion, without the benefit of its own evaluation of Gonzales. *United States v. White*, 21 F. Supp. 2d 1197, 1199 (E.D. Cal. 1997) ("Upholding [defendant's] refusal to submit to a forensic psychiatric examination by the government would allow [defendant] full use of her own expert's forensic psychiatric findings to develop her diminished capacity defense and deprive the government of the corresponding type and quality of information for its rebuttal."). In light of Gonzales's decision to introduce his own expert testimony regarding his ASD diagnosis and other cognitive limitations, the Government's proposed evaluation concerning the same is necessary to allow the Government a fair opportunity to rebut Gonzales's defense.

C.     **Reliability of Testing**

Finally, Gonzales argues that Dr. Muscatel's proposed testing may provide unreliable results because (1) the tests are not scaled for individuals with ASD and (2) Dr.

Muscatel lacks specialized expertise working with people with ASD. Dkt. 92 at 5. The Government provides Dr. Muscatel's curriculum vitae in response, Dkt. 99-2, and asserts that he "is an experienced neuropsychologist who has been performing neurophysiological evaluations for over thirty years, and has conducted thousands of such evaluations," and has routinely diagnosed neurodevelopmental disorders including ASD, Dkt. 102 at 3.

Regarding Dr. Muscatel's experience, upon review of his curriculum vitae the Court sees no reason to doubt his expertise working with and diagnosing persons experiencing neurodevelopmental disorders such as ASD.

Regarding the scaling of the tests, the Government concedes that Gonzales is correct but argues that the tests are not scaled for a reason, "as individuals with ASD are a subset of the entire population, and what the tests endeavor to explore is how the capacities of the person being tested compare to the broader population." *Id.* The Government's explanation of the non-scaling of the tests is reasonable, and without more the Court is not persuaded that the fact that the tests are unscaled would render Dr. Muscatel's results unreliable.

In sum, the Court concludes that the request for a compelled evaluation of Gonzales falls within Rule 12.2(b), is necessary, and is not likely to produce unreliable results. The Court further concludes that granting the request for an evaluation is appropriate as a matter of fundamental fairness and will promote reliability of the decision on suppression. Therefore, the Court grants the motion.

**D.      Conditions of Evaluation**

Gonzales requests certain accommodations for his disability during the evaluation. Dkt. 92 at 6–8. Specifically, he asks the Court to enter an order (1) prohibiting the examiner from questioning him about the alleged offenses, (2) requiring the evaluation and interview be videotaped; (3) setting the location of the testing at Gonzales's home or defense counsel's office; and (4) limiting the duration of the testing and interview to sessions lasting no more than two (or at maximum three) hours, with breaks, occurring over the course of several days. *Id.*

Regarding the nature of the questioning, the parties agree that Dr. Muscatel will not question Gonzales concerning the alleged offenses. *See, e.g.*, *Buchanan*, 483 U.S. at 423. Dr. Muscatel may ask questions about the interrogation of Gonzales by law enforcement.

Regarding the recording of the evaluation, the Government opposes the request for videotaping of the testing but agrees to defense counsel recording and attending at least Dr. Muscatel's interview with Gonzales. It is unclear whether the Government agrees to audio recording of the evaluation. Dkt. 99 at 9–10 (objecting to defendant's request to *videotape* the testing) (emphasis added). Dr. Muscatel objects to observation and/or recording of the testing portion of the evaluation because allowing third party observation and/or recording of the testing procedures would violate "ethical and standards of practice rules, and copyright restriction, by which forensic psychological practice adheres." Dkt. 99-1. Gonzales, however, cites ABA Guidelines opining that court-ordered evaluations of defendants initiated by the prosecution should be recorded on

audiotape, as well as several authorities at the district court level which have ordered the audio recording of testing performed by a government expert on a defendant. Dkt. 92 at 7.[2] Under these authorities, Gonzales's request to videotape the testing and/or have an observer present during the testing is denied. It should be noted that the Court does not believe that the forensic tests lose any of their forensic value if not they are not accompanied by video or audio recording. However, because it is unclear whether the Government opposes audio recording and because Gonzales has provided the better authorities on the issue, the entire evaluation shall be audio recorded with a copy provided to defense. Dr. Muscatel shall also accommodate Gonzales's counsel's observation of the other parts of his evaluation, mainly, the diagnostic interview.

Regarding the location of the evaluation, the parties agree that the examination may be conducted at defense counsel's office.

Regarding the duration of the evaluation, the parties agree that Dr. Muscatel may split up the evaluation approximated to last six hours over several days. The parties shall work together to determine whether it is more suitable to conduct the evaluation in three two-hour sessions or two three-hour sessions. Regardless of the duration of each session, Gonzales shall be given breaks as appropriate.

---

[2] The Court was unable to find the precise language Gonzales quotes from the ABA Guidelines via the internet address he provided in citation at Dkt. 92 p. 7. However, the Court was able to confirm that the Guidelines provide that "[w]henever feasible, recordings should be made of all court-ordered evaluations of defendants initiated by the prosecution or the court." ABA *Guidelines on Criminal Justice Mental Health Standards* § 7-3.5(d)(ii), *available at* https://www.americanbar.org/content/dam/aba/publications/criminal_justice_standards/mental_health_standards_2016.authcheckdam.pdf (last visited Feb. 11, 2020).

## III. ORDER

Therefore, it is hereby **ORDERED** that the Government's motion for psychological evaluation, Dkt. 86, is **GRANTED**. The parties shall work together to determine the time of the evaluation, which shall be conducted at defense counsel's office and take place across several days in sessions lasting no longer than three (3) hours per day.

The parties shall file a status report or stipulation setting a briefing schedule on the motion to suppress and dismiss, Dkt. 73, and the motion to sever counts, Dkt. 70, no later than February 28, 2020.

Dated this 12th day of February, 2020.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge